# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| | CASE NO. 2:15-CR-081(1) |
| vs. | : |
| | JUDGE MARBLEY |
| THOMAS G. THOMPSON, | : |
| Defendant. | : |

## DEFENDANT THOMAS G. THOMPSON'S MEMORANDUM CONTRA TO THE DISPATCH PRINTING COMPANY'S AND RECEIVER, IRA O. KANE'S, JOINT MOTION TO ENFORCE PLEA AGREEMENT

Defendant Thomas G. Thompson files this memorandum contra to the joint motion of The Dispatch Printing Company and Ira O. Kane, Receiver for Recovery Limited Partnership (RLP) and Columbus Exploration, LLC (CX) (collectively "Movants") for enforcement of the plea agreement he entered into with the government. In this motion, Movants label themselves as "third-party beneficiaries" Thompson's plea agreement in an effort to acquire standing to move to enforce the agreement that they view as breached. Movants mistakenly believe this self-imposed status as "third-party beneficiaries" affords them standing to intervene in Thompson's criminal case, rewrite the plea agreement, and then petition this Court to either enforce the plea agreement or hold Thompson in civil contempt. Additionally, Movants want Thompson's primary custody changed so that he is in custody for civil contempt, as opposed to the criminal contempt charge Thompson was arrested for eight months ago.

Neither federal nor Ohio law recognizes Movants' claim that they are intended third-party beneficiaries to Thompson's plea agreement. Additionally, contrary to Movants' claim, Thompson is not in breach of the plea agreement. Finally, Thompson's primary custody currently

lies with the United States Marshal in the criminal contempt case. In order to change Thompson's primary custody so that he is in custody on a civil contempt citation, he must either be sentenced to serve "time-served" or released on bond at which time he would roll into custody on the civil contempt citation. The government, will no doubt, resist either course of action.

I.   **CONTRACT LAW PRINCIPLES**.

The only "parties" to the plea agreement executed to resolve this case are the government and Thompson. Thompson agrees with Movants' broad contention that "ordinary principals (sic) of contract law" are used to enforce the bargains contained in the agreement. (Doc. No. 28, p. 3). However, because a guilty plea involves the waiver of fundamental constitutional rights, the analogy to a traditional contract is not complete, "and application of ordinary contract law principles to a plea agreement is not always appropriate." *United States v. Skidmore,* 998 F.2d 372, 375 (6th Cir. 1993). This conclusion and limitation to which contract law principles apply as an interpretative aid in construing plea agreements is sound because:

> [A] plea bargain is not a commercial exchange. It is an instrument for the enforcement of the criminal law. What is at stake for the defendant is his liberty....What is at stake for the government is its interest in securing just punishment for violation of the law and its interest that an innocent act not be punished at all. The interests at stake and the judicial context in which they are weighed require that something more than contract law be applied.

*United States v. Barron*, 172 F.3d 1153, 1156 (9th Cir. 1999).

An example of the limitation on using contract principles to establish contours to a plea agreement was recognized by the Ninth Circuit when it found that a "mutual mistake of law" does not give the parties the ability to rescind a plea agreement. *United States v. Transfiguracion*, 442 F.3d 1222, 1229-30 (9th Cir. 2006). Additionally, the First Circuit held that the parol evidence rule is not to be rigidly applied to give meaning to a provision of a plea agreement because of the

2

defendant's constitutional rights and concern for fair administration of justice. *Kingsley v. United States*, 968 F.2d 109, 115 (1st Cir. 1992).

The usage of common law third-party beneficiary principles to breathe meaning into plea agreements has not always been recognized. In *United States v. Lopez*, 944 F.2d 33 (1st Cir. 1991), the First Circuit noted the following about the applicability of the third-party beneficiary body of law:

> **even if third party beneficiary principles were applicable to a plea agreement in a criminal case, and we are unaware of authority to that effect**, a nonparty, at least absent a showing of detrimental reliance, could assert no right to performance under an agreement which was never enforceable between the contracting parties due to the failure of a condition precedent; here, the approval of the district court. (Emphasis supplied).

*Id*. at 36-37.

However, over the past fifteen years, this third-party beneficiary doctrine has found its way into plea agreement jurisprudence. Its use, however, is limited and its application to Thompson's case, is a function of Ohio common law. In *Norfolk & Western Co. v. United States,* 641 F.2d 1201 (6th Cir.1980), the Sixth Circuit, applying Ohio law, utilized an "intent to benefit" test to determine if a party was an "intended," as opposed to an "incidental," third-party beneficiary to a contract. *Id.* at 1208.

Under Ohio law if the promisee, the United States in Thompson's case, intends that a third-party should benefit from the agreement, then that third party is an "intended beneficiary" who has enforceable rights under the agreement. However, if the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an "incidental beneficiary," who has no enforceable rights under the agreement. *Id*.

The two cases relied on by Movants support this concept and illustrate agreements that were clearly intended to benefit third parties. In these two cases, either plea or cooperation

3

agreements were entered into by the government. Essential components of those agreements included the government's promise to confer immunity on third parties. After the government reneged on the immunity promises, the third parties successfully sought refuge in the plea and cooperation agreements and avoided criminal prosecution.

The first case cited was *United States v. El-Sadig*, 133 F.Supp.2d 600 (E.D. OH 2001). In this case, the government entered into an agreement with Prince Mansour of Saudi Arabia that it would not prosecute anyone who was part of the Saudi delegation involved in the illegal purchase and export of firearms as long as the weapons were surrendered. El-Sadig was involved in the illegal firearms activities, was not part of the formal Saudi delegation, but assisted in the surrender of the firearms. Nonetheless, El-Sadig was prosecuted.

The agreement in *El-Sadig* was a "cooperation agreement" as opposed to a plea agreement. Nonetheless, Judge Gwinn used "traditional principles of contract law" to divine its meaning. *Id*. 605. Judge Gwinn found that El-Sadig was a third-party beneficiary of the non-prosecution agreement entered into by the United States and Saudi Arabia's ambassador. *Id*. at 610. Clearly, the focus of this agreement was to confer immunity on everyone involved in the illegal firearms activity making them intended third-party beneficiaries.

A similar agreement was the focus of the next case Movants cited—*United States v. Florida West International Airways, Inc. et al.*, 853 F.Supp.2d 1029 (S.D. FL 2012). In that case, the government indicted a foreign air cargo provider for participating in a price-fixing conspiracy. A plea agreement was executed whereby the provider pled guilty to violating the Sherman Antitrust Act and paid a fine in exchange for immunity for certain employees and related corporations. Later, the government indicted a United States airline (Florida West) as well as an

individual (Hidalgo), who was an executive of both an air cargo provider and two of its subsidiaries, including Florida West.

The plea agreement did not mention Hidalgo and Florida West by name as organizations that were conferred immunity. However, the court applied Florida law on third-party beneficiaries and interpreted the terms of the plea agreement to mean the signatory parties unmistakably intended to confer immunity on a discrete class of corporations and individuals including Hidalgo and Florida West. *Id*. at 1228.

Thompson's case is clearly distinguishable from *El-Sadig* and *Florida West* because in those two cases, there were clearly third-parties who benefited from the cooperation and plea agreements that were formulated—those who were conferred immunity in exchange for those agreements. Ohio third-party beneficiary jurisprudence as well as these two cases clarify when this contract law concept can be used to confer rights in a plea agreement.

Contrary to their claims, Movants were not the intended beneficiaries of Thompson's plea agreement. Instead, paragraph 4(a) of the plea agreement simply conferred the same rights on Movants as they have in the Case No. 2:06-cv-292 as well as the companion civil cases pending in Franklin County Court of Common Pleas--the right to determine the current status of the 500 gold restrike coins as well as Thompson's assets. As the movants already have the remedies at their disposal from other litigation to which they are a party, under Ohio law, they are incidental beneficiaries and have no enforceable rights under the plea agreement.

## II. PARAGRAPH 4(a) OF THE PLEA AGREEMENT.

If they achieve the status of intended "third-party beneficiaries" to Thompson's plea agreement, Movants will point to paragraph 4(a) to support their claim that Thompson is in breach. However, that paragraph does not support this conclusion. Paragraph 4(a) provides as follows:

> The Parties further agree to the following:
>
> Defendant agrees to assist the Parties in Case No. 06-CV-0292, and any other party identified by the Court as having an interest, in identifying and recovering assets. Defendant agrees to testify under oath at a proceeding, amounting to a debtor's examination, to identify and recover assets. This examination shall include, but is not limited to, questions regarding the gold strike commemorative coins which were the subject of previous orders in Case No. 06-CV-0292. After Defendant answers questions in the debtor's examination, a reasonable time will be permitted for a process amounting to civil discovery to verify answers and trace assets. After the debtor's examination and a reasonale (sic) period of time for discovery, if the government is satisfied that all questions have (sic) fully answered, it shall recommend to the Court that the civil contempt be deemed "cured." This term shall not bar the Court from adducing and ordering a sentence including incarceration in this case for criminal contempt. The government acknowledges that it is the Parties' intention that the identification of property and assets shall proceed as a condition of Defendant's cooperation under the terms of this Agreement and that the determination of whether Defendant has in fact cooperated in this regard shall be made by this Court and only by this Court, consistent with the terms and conditions of this Agreement. Further, the government acknowledges that it is the Parties' intention that any sanctions or consequences arising from Defendant's failure to cooperate in the identification and recovery of assets in Case No. 06-CR-0292 be determined and imposed by this Court as part of the instant proceeding, and only by this Court as part of the instant proceeding. Defendants' submission to any debtor's examination shall not be limited to one hearing or proceeding, but rather, any examination may proceed as part of the instant criminal matter during any period of incarcerations (sic) and during any term of supervised release and Defendant's failure to comply shall be deemed a material breach of this Agreement.

(Doc. No. 4, Plea Agreement, ¶4(a).

A plain reading of this provision demonstrates that there is no time certain within which Thompson must sit for a debtor examination. This paragraph reminds the parties to the agreement (Thompson and the government) that the examination can occur on more than one occasion.

6

Additionally, the examination(s) can occur while Thompson is incarcerated or even while he is on supervised release, both of these occasions would obviously be triggered after sentence is imposed. Finally, the agreement is clear that Thompson's failure to comply is a breach of the plea agreement.

Without question, it would behoove Thompson to complete the examination(s) before sentence is imposed in this criminal case as that would demonstrate compliance, which would be a sentencing factor that would weigh in his favor under 18 U.S.C. §§ 3553(a)(1) and (a)(2)(A). Additionally, submitting to the examination(s) as well as answering the eight questions posed by Judge Sargus in his Order filed August 6, 2012 (Case No. 2:06-cv-292, Doc. No. 761, p. 3) would also purge his civil contempt citation that is currently in place.

Contrary to Movants' contention, Thompson is not in breach of the plea agreement according to the verbiage found in paragraph 4(a). A review of the four corners of the agreement, which is the interpretative method to be used, supports this conclusion. *United States v. Ashley*, 91 Fed. Appx. 485, 488, 2004 WL 540469 (6th Cir. 2004).

### III. PRIMARY CUSTODY.

On January 27, 2015, Thompson was arrested in the Southern District of Florida on a warrant that issued when a criminal complaint was filed in this Court in Case No. 2:13-mj-177. After his arrest, Thompson was taken to the district court in West Palm Beach for identity, detention and removal hearings on this criminal charge. Both Thompson's identity as well as probable cause that he committed this offense, were easily established. Additionally, the government persuaded the presiding United States Magistrate Judge that Thompson's release posed a "risk of flight;" consequently, he was detained.

Thompson was then removed to the Southern District of Ohio where he has remained in custody on the criminal contempt charge. Consequently, Thompson's primary custody currently

lies, as it has for the past eight months, with the United States Marshal on the criminal contempt case. However, Movants want to, euphemistically, "incentivize" Thompson to immediately sit for a debtor examination. (Doc. No. 28, p. 7). To achieve this goal, Movants want to change his custodial status so that his primary custody is for civil, as opposed to criminal contempt.

Movants string-cite a number of cases which they claim support such a move. (Doc. No. 28, p. 6). However, curiously, none of these cases address the fundamental question that Thompson's current primary custody has on their request. Courts have uniformly held that primary custody remains with the sovereign that initially arrested a prisoner. *Wardell v. Wilson*, 2011 WL 6027072, at *2-3 (E.D. Ky. Dec. 5, 2011). Thus, primary custody has two analytical parts, the sovereign who made the initial arrest as well as the offense for which the defendant was arrested. Primary custody continues until the sovereign that first arrested an individual has relinquished its jurisdiction in some way. *Moore v. Butler*, 2015 WL 128126, at *5 (E.D. Ky. Jan. 8, 2015), *appeal dismissed* (July 15, 2015).

Generally, primary custody jurisdiction can be relinquished by operation of law, such as bail release, dismissal of the charges, parole release, or expiration of a sentence. *Taylor v. Reno,* 164 F.3d 440 (9th Cir. 1998). Primary jurisdiction may also be relinquished by the mutual agreement of the two custodial jurisdictions. *United States v. McCrary,* 220 F.3d 868 (8th Cir. 2000). Thus, the sovereign with primary jurisdiction may elect under the doctrine of comity to relinquish its jurisdiction to another sovereign, if that sovereign accepts. This discretionary election is an executive, not judicial, function of the two sovereigns. *Poland v. Stewart,* 117 F.3d 1094, 1098 (9th Cir. 1997).

Thompson's case is unique in that for the past eight months, he has been in the custody of the United States Marshal on a criminal contempt case. If successful, the Movants would change

this status so that he would remain in the custody of the Marshal, but on a civil contempt citation. Thus, the sovereign maintaining Thompson's custody would remain the same, but the purpose of his custody would change. To accomplish this on Movants' timetable, Thompson would have to either be sentenced to serve a "time-served" sentence or he would have to be released on bond in the criminal contempt case. In either of these events, Thompson would roll into custody on the civil contempt citation that is currently in place in Case No. 2:06-cv-292.

IV. **CONCLUSION.**

Movants are not intended third-party beneficiaries of the plea agreement that Thompson entered into with the government. At most, Movants are incidental beneficiaries as the remedies they seek are available to them under the civil cases they are currently prosecuting. Next, contrary to Movants' claims, Thompson is not in breach of his obligation to sit for a debtor exam that is embodied in the plea agreement. Paragraph 4(a) shows that Thompson can sit for the debtor exam either before or after he is sentenced. Finally, in order for Thompson to be placed in custody on a civil contempt citation, he must either be sentenced to serve "time-served" or released on bond in criminal contempt case.

Respectfully submitted,

 /s/ Joseph E. Scott
Joseph E. Scott (0061640)

 /s/ Steven S. Nolder
Steven S. Nolder (0037795)
Scott & Nolder Law Firm
65 East State Street, Suite 200
Columbus, Ohio 43215
(614) 221-9790
snolder9@gmail.com
Attorneys for Thomas G. Thompson

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document has been electronically served on AUSA Douglas Squires, Steven W. Tigges, Ariel Brough, and Terry K. Sherman this 21ST day of September, 2015.

/s/ Steven S. Nolder
Steven S. Nolder (0037795)
Attorney for Thomas G. Thompson